**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GEORGE L. CHAPMAN** | **CIVIL ACTION** |
| **VS.** | **NO. 15-CV-994** |
| **SPARTAN OFFSHORE DRILLING, LLC AND MARINE TRANSPORTATION SERVICES, INC.** | **SECTION "B"(5)** |

## ORDER AND REASONS[1]

Before the Court is defendant, Spartan Offshore Drilling, LLC's ("Spartan") motion for partial summary judgment on the grounds that plaintiff lacks a cause of action for claims of maintenance and cure. Rec. Doc. 19. Plaintiff George L. Chapman ("Chapman") opposes the motion. Rec Doc. 22. Defendant has filed a reply (Rec. Doc. 26) and supplemental memorandum (Rec. Doc. 30) in support of its motion.

Having considered the memoranda of counsel, the record, and the applicable law,

**IT IS ORDERED** that the motion is **GRANTED**.

## I.  BACKGROUND

This action arises under the Jones Act, 46 U.S.C. § 30104, and the General Maritime Laws. Rec. Doc. 1 at 2. Chapman was employed by Spartan as a Jones Act seaman aboard the M/V SPARTAN 208 in September 2014. *Id.*

---

[1] John D'Avello, a third year student at Tulane University Law School, assisted in drafting this order.

1

*A. Factual Background*

The undisputed facts reveal that Chapman initially applied for a position with Spartan in June 2013 and was hired. Rec. Doc. 19-7 at 2-3. He was laid off in November 2013 due to a workforce reduction but reapplied and was rehired as a roustabout in January 2014. *Id.* As a condition to initial employment, Spartan required that Chapman complete a post-offer, pre-placement entrance examination ("entrance exam") and be cleared by a physician. Rec. Doc. 19-2 at 6-7; Rec. Doc. 19-7 at 3-4. Upon his second hiring Spartan required that Chapman review and provide any corrections to the first entrance exam and submit to another physical examination. *Id.* The entrance exam is comprised of a list of questions about a potential employee's medical history. Rec. Doc. 19-7. The prospective employee must certify that any information provided is true and correct, and acknowledge that failure to truthfully answer any question could result in the denial of a right to maintenance and cure benefits. *Id.* at 19.

The entrance exam requires a prospective employee to indicate if he or she has experienced a variety of medical issues. Chapman completed his first entrance exam on June 17, 2013. Rec. Doc. 19-1 at 3; Rec. Doc. 22-1 at 1. He indicated by checking the box for "Yes" and providing a brief explanation that he had previously had a shoulder spur removed, had broken his left arm, and had pulled a muscle in his lower back. *Id.* at 6-8, 12-15. Chapman checked

2

"No" for all other relevant questions, including if he had ever had surgery, lost time from work, had work activities restricted by a doctor, was taking any medication or was subject to any medical treatment. *See Id.* at 5-15. Chapman signed and dated the first entrance exam, certifying that all supplied information was true and correct and acknowledging that failure to truthfully answer any question could result in denial of maintenance and cure benefits. *Id.* at 19.

It is uncontested that, despite Chapman's representations on his first entrance exam, he had in fact complained of and been treated for lower back problems for the past seven years. On January 5, 2006, Chapman visited Dr. Sage B. Smith and complained of lower back pain. Rec. Doc. 19-1 at 1; Rec. Doc. 22-1 at 1. Three days later he received a lumbar MRI which revealed a disc herniation at L5-S1. *Id.* On January 17, 2006, Chapman visited Dr. Robert White at the Coastal Neurological Institute and reported a dull ache in his lower back that had existed for six to eight years. *Id.* Chapman received lumbar epidural steroid injections on thirteen separate occasions over the next seven years. Rec. Doc. 19-1 at 2–3; Rec. Doc. 22-1 at 1–2. Chapman or his wife also called Dr. Smith on twelve separate occasions from August 17, 2006 to January 7, 2010, to request pain medication for his back. *Id.* On a June 27, 2012, visit with Dr. William Smith, Chapman reported missing time from work due to back pain; Dr. Smith subsequently

3

restricted Chapman from working for an additional two weeks. *Id.* On July 23, 2012, Chapman underwent a lumbar MRI which revealed a disc herniation at the L4-5 level of the spine. *Id.* Chapman disputes whether Dr. Smith discussed the possibility of back surgery with him on this date. *Id.* Chapman received four lumbar epidural injections between June 2012 and May 2013, including one on May 17, 2013. *Id.*

Spartan's physical examination of Chapman was conducted by Dr. Kirthland D. Swan ("Dr. Swan")on June 17, 2013—just one month after he had last received a lumbar epidural injection. Rec. Doc. 19-1 at 4; Rec. Doc. 22-1 at 2. In response to a direct question, Chapman denied having any history of disc or other problems with his back. *Id.* Chapman was also examined by Dr. J. Lee Leonard ("Leonard") on that day. *Id.* Chapman's deposition states that he discussed his history of back issues with Dr. Leonard and that the two went over the results of an x-ray examination showing Chapman's disc issue. Rec. Doc. 22-6 at 5. Dr. Leonard testified no such medical history was discussed, and that he would have noted any such discussion and referred Chapman for further MRIs in light of such history. Rec. Doc. 19-10 at 3-4, 9-10. Further, Dr. Leonard stated that if he had known of Chapman's herniated disc, he would not have recommended him for hiring without additional examinations. *Id.* at 4-5. Dr. Leonard stated "you can't see a disc on an x-ray." *Id.* at 8.

When Chapman applied for a roustabout position with Spartan on January 20, 2014, he reviewed the entrance exam he previously completed on June 17, 2013, and made no changes to any information it contained. Rec. Doc. 19-1 at 5; Rec. Doc. 22-1 at 2. Chapman had received a lumbar epidural steroid injection in November 2013, which he did not reveal. *Id.* Dr. Swan conducted another physical examination. *Id.* In response to direct questions from Dr. Swan, Chapman denied ever having been told he had a back disorder or receiving treatment for his back. *Id.* He also denied having a disc problem in his back, and denied ever having any problem with his back except for a pulled muscle that "lasted a week or so" in 2013. *Id.* Chapman acknowledged in a deposition that he lied to Spartan regarding his past history of back injuries while knowing that Spartan wanted the information as a prerequisite to hiring. Rec. Doc. 19-8 at 4-5.

On September 2, 2014, Chapman reported waking up to a pain in his back. Rec. Doc. 19-2 at 14. A supervisor at Spartan filed the initial report that day. Rec. Doc. 19-11 at 3. The report states Chapman experienced pain in his right leg and lower back upon getting out of bed, but could not recall injuring it. *Id.* Chapman also revealed that he had trouble with his back in the past. *Id.* Subsequently, Chapman recalled injuring his back while unloading a pipe in the scope of his employment the day before. Rec. Doc. 22 at 2. Wilton Landry, Spartan's Health, Safety, and Environmental

manager, thereafter made arrangements to remove Chapman from the rig so he could seek medical attention. Rec. Doc. 19-11 at 1-2. Spartan provided maintenance and cure for a short period of time. *Id.* While investigating the reported incident, Spartan secured Chapman's medical records and discovered his prior history of back injuries. Rec. Doc. 19-2 at 15. Based upon the failure to disclose prior medical history, Spartan terminated maintenance and cure payments and denied approval of the recommended surgery. *Id.* Chapman sought treatment with Dr. Rand Voorhies, a neurosurgeon, who recommended a lumbar fusion at the L4-5 level. Rec. Doc. 19-2 at 15; Rec. Doc. 22 at 3.

*B. Procedural Background*

Chapman filed this suit on March 31, 2015. Rec. Doc. 1. Chapman alleged claims of negligence, unseaworthiness, and maintenance and cure benefits for injuries sustained and subsequent expenses, as well as punitive damages for arbitrary and/or unreasonable failure to provide maintenance and cure. Rec. Doc. 1 at 3-5. On December 21, 2015, Spartan moved for partial summary judgment on the issue that plaintiff lacks a cause of action for maintenance and cure. Rec. Doc. 19.

*C. Arguments of the Parties*

Spartan argues that Chapman lacks a cause of action for maintenance and cure because he willfully concealed a history of

lower back treatment that was material to the decision to hire and causally linked to the injury complained of. Rec. Doc. 19 at 1.

Chapman opposes the motion, arguing summary judgment is inappropriate and urging the Court to either defer or deny the motion, allow time for Chapman to obtain affidavits or take discovery, or issue some other appropriate order. Rec. Doc. 22. Chapman first argues that the motion for partial summary judgment is premature because discovery is not yet complete. Id. at 1. Chapman urges the Court to allow for three "key" depositions: (1) the treating physician, Dr. Rand Voorhies, regarding the causal link between the allegedly concealed injuries and the disability complained of; (2) Dr. William Smith, regarding his alleged discussion of back surgery with Chapman prior to employment; and (3) Wilton Landry, regarding his knowledge of Chapman's prior medical history. Doc. 22 at 1-2. Landry has now been deposed, and asserted he had no previous knowledge of Chapman's injury and indeed had no knowledge of Chapman at all until he reported his injury. Rec. Doc. 28-3 at 3-4.

Chapman also asserts that summary judgment is inappropriate on the merits for three reasons. Rec. Doc. 22 at 5-8. First, Chapman asserts Spartan cannot establish concealment of prior injuries. Id. at 5-7. Second, Chapman argues that even if such back issues were not disclosed at the time of hiring they were immaterial to any hiring decision. Id. at 7. Finally, Chapman

7

argues no causal link exists between the prior injuries and the current injury. *Id.* at 8.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 749 (5th Cir. 2002). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R. Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).

The party moving for summary judgment must initially establish the nonmoving party's lack of evidence to support its case. FED.R.CIV.P. 56(c); *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014). Once this burden is met, a party cannot "defeat summary judgment with conclusory allegations, unsubstantial assertions, or 'only a scintilla of evidence.' " *Celtic Marine Corp. v. James C. Justice Companies, Inc.*, 760 F.3d 477, 481 (5th Cir. 2014); *TIG Ins. Co.*, 276 F.3d at 759. Rather, the nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish the existence of a genuine factual issue. *Matsushita*

8

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In considering the motion a court must draw all justifiable inferences in favor of the nonmoving party and must not make credibility determinations or weigh the evidence. *TIG Ins. Co.*, 276 F.3d at 759; *Celtic Marine Corp.*, 760 F.3d at 481.

### III. LAW AND ANALYSIS

Jones Act seaman are entitled to powerful and generous remedies under general maritime law due to their close relationship with the vessel and the particular hazards of their work; chief among these benefits is the right to maintenance and cure. *Willis v. McDonough Marine Serv.*, Civ. A. No. 14-811, 2015 WL 3824366, at *3 (E.D. La. June 18, 2015). Maintenance is a duty imposed upon a shipowner to provide for a seaman who becomes injured during his service to the ship. *Silmon v. Can Do. II, Inc.*, 89 F.3d 240, 242 (5th Cir. 1996). Maintenance is a subsidence allowance intended to cover the reasonable costs a seaman incurs for his food and lodging during the period of his injury. *See Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995), *abrogated on other grounds*, *Atl. Sounding Co., Inc. v. Townsend*, 129 S.Ct. 2561 (2009). Cure is an employer's obligation to pay for the medical care of the sick or injured seaman. *Id.* at 1499; Thomas J. Schoenbaum, Admiralty and Maritime Law, § 6-32, at 361 (2d ed. 1994). This right "terminates only when maximum cure has been obtained."

*Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1985).

A Jones Act employer may investigate a claim for maintenance and cure, and may rely on certain defenses to deny such claims. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). Maintenance and cure is not owed where a seaman knowingly or fraudulently conceals or fails to disclose a pre-existing injury from a shipowner or employer who required the seamen to submit to a pre-hiring medical examination or interview. *McCorpen v. Cent. Gulf Steamship Corp.*, 396 F.2d 547, 548-49 (5th Cir. 1968). The *McCorpen* defense is established when an employer proves: (1) the seaman intentionally misrepresented or concealed medical facts; (2) the concealed facts were material to the employer's decision to hire the seaman; and (3) the withheld information and injury complained of in the lawsuit are causally connected. *Brown*, 410 F.3d at 171. The Court addresses each element of Spartan's *McCorpen* defense in turn.

*A. Concealment*

The first prong of the *McCorpen* defense establishes that "where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *McCorpen*, 386 F.2d at 549. Whether a

10

seaman intentionally misrepresented or concealed material medical facts is essentially an objective inquiry where the employer "need only show that the seaman '[f]ail[ed] to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information.'" *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015) (quoting *Vitovich v. Ocean Rover O.N.*, Civ. A. No. 94-35047, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)).

In *Brown*, the Fifth Circuit found a Jones Act employer established, as a matter of law, that a seaman intentionally concealed his prior history of back injuries. 410 F.3d at 175. There, the employer's health history form specifically asked whether the applicant had suffered past or present back and neck trouble, to which Brown responded negatively. *Id.* at 171. The employee had in fact been fired from a previous job for failing to disclose a back injury that required emergency room treatment. *Id.* at 170. The court held that where the employee failed to disclose a history of back injuries on a subsequent application, an intentional concealment occurred. *See id.* at 169-75.

Similarly, in *Wimberly v. Harvey Gulf International Marine, LLC*, the Court held that a Jones Act employer established as a matter of law that a seaman intentionally concealed a prior history of back injuries. Civ. A. No. 14-1208, 2015 WL 5089538, at *6 (E.D. La. Aug. 27, 2015). The seaman admitted experiencing chronic back

11

pain to prior doctors, and was prescribed pain killers and physical therapy some six months before applying for a job with the defendant. *Id.* at *5. Furthermore, his medical records revealed chronic neck pain due to degenerative joint disease, a vertebral fracture, and a history of back pain. *Id.* at *4. The seaman subsequently failed to check "Yes" to questions about back and neck problems on a post-hire medical questionnaire, though he did make a "tepid admission of frequent back pain without explanation." *Id.* at *5. This sufficed to prove objective intent to downplay and conceal prior injuries. *Id.*

Drawing all justifiable inferences in favor of Chapman and refraining from making credibility determinations or weighing the evidence, no genuine issue of material fact precludes the Court from concluding that Chapman meets the threshold for concealment of "back trouble" made in *Brown*. The disclosure of any injury, treatment, or workplace issue related to the back was "plainly desired" on both entrance exams. Furthermore, Dr. Swan directly asked Chapman if he had any history of disc or other problems with his back or had ever received treatment. Chapman denied ever having a problem with his back with the exception of a week-long pulled muscle. In fact, Chapman had complained of back pain beginning in 2006, and had received at least thirteen steroid injections requested prescription medication for his back pain on at least twelve occasions since that time. *See* Rec. Doc. 19-1 at 2; Rec.

Doc. 22-1 at 1. Chapman acknowledged in his deposition that he knew the information regarding his medical injury was desired as a prerequisite to his employment, and admitted lying on the entrance exam and in response to direct questions. Rec. Doc. 19-8 at 4-5.

The pleadings, depositions, and interrogatories reveal the full history of Chapman's prior back injuries and treatments, as well as Chapman's repeated untruthful answers to Spartan's questions about his back. Chapman's statement to Spartan that he had a short-lived pull of a back muscle and Chapman's flatly disputed contention that he told Dr. Leonard that he had a "messed up" disc and "talked about the doctors and what they had said about it" constitute "tepid" admissions that fall short of meaningful disclosure or otherwise responsive answers to Spartan's repeated questioning about Chapman's history of back injuries. *See Brown*, 410 F.3d at 171; *Wimberly*, 2015 WL 5089538, at *5. There is no genuine issue of material fact precluding the Court from concluding that Chapman intentionally concealed medical facts plainly desired by Spartan. *See Wimberly*, 2015 WL 5089538, at *6.

*B. Materiality*

To meet the second prong of the *McCorpen* defense the defendant must show that the plaintiff's misrepresentations were material to its hiring decision. *See Brown*, 410 F.3d at 171 (citing *McCorpen,* 396 F.2d at 547). Materiality exists where an

13

employer asks specific medical questions rationally related to an applicant's physical ability to perform job duties. *Id.* at 175. If an employee can show that even if undisclosed facts were material he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense to evade its maintenance and cure obligation. *See McCorpen*, 396 F.2d at 551-52; *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014) (Morgan, J.). A genuine issue of fact exists when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries. *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006).

The specific medical questions posed by the entrance exam and by Doctors Swan and Leonard clearly related to Chapman's ability to perform his job duties; therefore, the answers to such questions were material. *See Brown*, 410 F.3d at 171. Both of Spartan's examining physicians stated that, had the full extent of Chapman's medical history been revealed, they would not have released him to work and would have referred him for additional testing. *See* Rec. Doc. 19-9 at 8; Rec. Doc. 19-10 at 3-4. Chapman has failed to show that Spartan would have hired him regardless of the undisclosed material facts. Chapman argues that he otherwise passed Spartan's physical exam; however, the Fifth Circuit in *Brown* rejected the argument that a plaintiff's successful passing of an employer's physical exam factors in to a *McCorpen* materiality analysis. *See*

14

*Brown*, 410 F.3d at 175. There is no justifiable inference that Chapman would have been hired regardless of his medical history. Accordingly, no genuine issue of fact as to the materiality of the concealed or misrepresented medical history exists.

*C. Causal Connection*

In order to establish the final element of the *McCorpen* defense, the defendant must demonstrate the existence of "a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. The present injury need not be "identical" to the previous injury, nor must the previous injury be the "sole cause" to establish a causal relationship. *Brown*, 410 F.3d at 176. "Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part." *Johnson v. Cenac Towing*, 599 F. Supp. 2d 721, 728-29 (E.D. La. March 2, 2009) (Vance, J.).

The link between prior and present injuries does not necessarily need to occur to the exact same vertebrae or tissue but rather in the same location on the body. *Brown*, 410 F.3d at 176-77 (holding that causality existed where plaintiff's prior injury was a lumbar strain which sent him to the emergency room and present injury was a herniated disc in the lumbar region of the spine); *see also Wimberly*, 2015 WL 5089538, at *7; *Kathryn Rae Towing, Inc. v. Buras*, Civ. A. No. 11-2936, 2013 WL 85210, at *7

15

(E.D. La. Jan. 7, 2013) (Vance, J.) (finding a causal link on summary judgment where previous diagnoses and the precise lumbar vertebrae injured were not identical but employee's complaints to doctors were quite similar); *Weatherford v. Nabors Offshore Corp.*, Civ. A. No. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004) (Duval, J.) (finding a causal link on summary judgment where plaintiff concealed prior injury to lower back and instant injury claim included pain in the lower back). "The inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes." *Johnson*, 599 F. Supp. 2d at 728-29.

Spartan has established that Chapman's present back pain injury is related to a history of back pain in general and at the L4-5 level specifically, beginning at least fourteen years before the injury complained of. Chapman argues that summary judgment is inappropriate at this stage because he has not been afforded the opportunity to "go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish the existence of a genuine factual issue." *See Matsushita*, 475 U.S. at 586. Specifically, Chapman states that without deposing Dr. Smith and Dr. Voorhies, "it is unknown what the similarities and/or differences are between plaintiff's prior problems and current complaints." Rec. Doc. 22 at 9.

Following the standard set forth in *Brown* and considering the pleadings, depositions, answers to interrogatories, admissions,

16

and affidavits before the Court, the Court cannot conclude there is a genuine issue of material fact as to the causal connection element or a need to allow for additional discovery. Dr. Voorhies has unequivocally recommended a lumbar fusion at the L4-5 level of Chapman's lumbar spine. Rec. Doc. 19-2 at 15; Rec. Doc. 22 at 3. Chapman submits Dr. Smith must be deposed in order to determine whether he discussed surgery at this level with Chapman prior to his employment with Spartan. This additional testimony is irrelevant to the consideration of whether or not a causal link exists when the evidence reveals that Chapman: underwent a lumbar MRI with Dr. Smith which revealed a disc herniation at L5-S1; received lumbar epidural steroid injections on thirteen separate occasions over the next seven years; requested pain medication for his back from Dr. Smith on twelve separate occasions; was restricted from working for two weeks due to back pain by Dr. Smith; underwent a lumbar MRI which revealed a disc herniation at the L4-5 level of the spine in 2012. *See* Rec. Doc. 19-1 at 1; Rec. Doc. 22-1 at 1.

While the testimony of Dr. Smith and Dr. Voorhies could further elucidate the nature of Chapman's previous and present injuries, Spartan must only show that the "old injury and the new injury affected the same body part." *Johnson*, 599 F. Supp. 2d at 728-29. Based on the evidence now before the Court, no genuine issue of material fact exists because it is clear that the injuries

17

effected that same location on the body—the lower back generally, and the L4-5 level of the spine specifically. *See Brown*, 410 F.3d at 176-77; *Wimberly*, 2015 WL 5089538, at *7. Therefore, Spartan has met its burden of showing a lack of genuine material fact regarding the causality element of the *McCorpen* defense.

## IV.   CONCLUSION

Spartan has established all three prongs of the *McCorpen* defense, with no genuine issue of material fact precluding the Court from granting summary judgment on Chapman's maintenance and cure claim in favor of Spartan. Accordingly,

**IT IS ORDERED** that defendant's motion for partial summary judgment is **GRANTED**.

New Orleans, Louisiana, this 8th day of April, 2016.

_____
UNITED STATES DISTRICT JUDGE